**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANE TAYLOR,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-2060** |
| | : | |
| **J. SMITH, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**COSTELLO, J.**                                                                              **MAY  6, 2026**

Plaintiff Dane Taylor, who is currently confined at SCI Phoenix, brings this *pro se* action

alleging that his constitutional rights were violated.  The Court will grant Taylor's application to

proceed *in forma pauperis* and will screen his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

As explained below, the Court will dismiss the Complaint, but Taylor will be permitted an

opportunity to file an amended complaint if he can cure the deficiencies noted by the Court.

**I.      FACTUAL ALLEGATIONS**[1]

Taylor's claims arose while he was housed on Alpha Block in the Restricted Housing

Unit ("RHU") at SCI Phoenix.  (Compl. at 7, 17.)  Named as Defendants are: Unit Manager J.

Smith; C.O. Cavalari; Sgt. Leary; Nurse Jane Doe; Superintendent J. Terra; and Lt. McCafferty.

(*Id.* at 2.)  They are sued in their individual and official capacities.  (*Id.* at 16.)  Taylor seeks

declaratory and injunctive relief, as well as money damages.  (*Id.* at 15, 24-26.)

Taylor primarily bases his claims on a Department of Corrections ("DOC") policy,

which he presents as follows: "Per policy 6.5.1, Administration of Security Level housing units,

---

[1] The following factual allegations are taken from Taylor's Complaint, which consists of a
preprinted form, handwritten supplements, and exhibits.  (*See* ECF No. 2 ("Compl.") at 1-94.)
The Court adopts the pagination supplied by the CM/ECF docketing system to the pleadings in
this case.

Section 1. Administration 2.I.  An inmate shall be issued outerwear during inclement weather. Outerwear shall include brown state issued shoes or boots labeled with the inmate[']s name and department number, a coat, a knit hat, and cloth gloves."  (*Id.* at 17.)  According to Taylor, "[t]hroughout the entire winter of 2024 into 2025" he was "forced to weather the cold without boots."  (*Id.*)  Instead, he was "forced to wear a pair of light duty summer shoes known as 'skimpies,'" which he asserts means "deficient."  (*Id.*)  Taylor avers that he requested winter boots from Defendants McCafferty, Cavalari, Smith, and Terra "on multiple occasions," in person and through inmate request slips.  (*Id.*)

Taylor claims that on January 14, 2025, he was "left in the yard from approximately 3:00 p.m. to 4:15 p.m. in under 30 degree weather wearing the deficient shoes known as 'skimpies.'" (*Id.* at 18.)  He contends that he can be seen on CCTV footage "limping from the fourth cage from the back left side yard of Alpha Block to his cell."  (*Id.*)  Upon his return to his cell, Taylor's body warmed up but "his toes and most of his feet didn't."  (*Id.*)  Approximately five minutes later, because he was unable to walk, C.O. Brooks lifted him from the cell floor and walked Taylor to a wheelchair.  (*Id.*)  At medical, a nurse "reported that . . . Taylor had hypothermia.  His feet were still ice cold and red, as blood struggled to circulate."  (*Id.*)  Taylor was given ibuprofen and "put on for sick call the following day."  (*Id.*)  However, Taylor contends that Defendant Nurse Jane Doe "ignored" his appointment the following day, "[r]eporting a false official statement that the Plaintiff refused to be seen which resulted in Plaintiff having to hold his wicket hostage just to be seen."  (*Id.*)  However, Taylor also states that he was taken to medical that day due to pain in his feet that were "still blue-ish from lack of blood temperature."  (*Id.* at 19.)  The medical staff soaked his feet in hot water.  (*Id.*)  According to Taylor, he could not attend yard for several weeks until he was able to stand on his feet

without pain. (*Id.*) Taylor claims he continued to request boots from Defendants Smith, McCafferty, Cavalari, Terra, and other staff to no avail, as his requests and request slips were ignored. (*Id.*)

On February 8, 2025, from approximately 2:30 p.m. until 3:40 p.m., Taylor again was "left in the cold in 'deficient' footwear known as skimpies" in the RHU yard for Alpha block. (*Id.* at 19-20.) Taylor contends that this was in retaliation for filing grievance #1128829 on January 14, 2025. (*Id.* at 19.) He alleges that C.O. Cavalari and Sgt. Leary disregarded his request for a coat and that he was the only inmate in the yard without a coat or hat. (*Id.* at 20.) "When addressed at the end of yard, Defendant C.O. Cavalari stated, 'shit, my bad, I forgot'; Defendant Sgt. Leary stated 'Grieve it. I ain't the regular down here.'" (*Id.*) Taylor claims that he was "denied medical" but also states that "Nurse Liah" gave him ibuprofen and "told the staff 'y'all need to stop leaving them out there when it's cold like this.'" (*Id.*)

Based on these allegations, Taylor claims that Unit Manager Smith was negligent in failing to provide him boots during the winter of 2024 in violation of his Eighth Amendment rights. (*Id.* at 20-21.) He contends that Defendant Smith also violated his Fourteenth Amendment right to equal protection of the laws by not ensuring that Taylor had the same access to boots and a coat as the rest of the prison population. (*Id.* at 21.) He further claims that the alleged deprivation of boots, coat, and hat on February 8, 2025, was retaliatory, and in violation of the Eighth Amendment and Equal Protection Clause. (*Id.*) Additionally, Taylor alleges that C.O. Cavalari and Sgt. Leary violated his Eighth Amendment rights on February 8, 2025, by denying him "his requested boots" and violated his Fourteenth Amendment equal protection rights because he was the only inmate in the yard that day without a coat. (*Id.* at 22.) As to Nurse Jane Doe, Taylor alleges that she violated his Eighth Amendment and equal protection

3

rights by "neglecting Plaintiff Taylor's need for his sick call appointment on 1-15-25 and lying that Plaintiff Taylor refused the sick call." (*Id.* at 22-23.)  Taylor also claims that Lt. McCafferty's "negligence of the inmates not receiving the requested boots the entire winter [of] 2024 into 2025" violated his Eighth Amendment and equal protection rights.  (*Id.* at 23.)  He further contends that his Fourteenth Amendment due process rights were violated by Lt. McCafferty "[i]f there isn't any CCTV footage reserved for the . . . 2-8-25 incident" as he requested in grievance #113696.  (*Id.*)  With respect to Superintendent Terra, Taylor alleges that he was "made personally aware" of the alleged January 14 and February 8 violations and the alleged retaliatory act of denying Taylor a coat.  (*Id.* at 23-24.)  Further, Taylor contends that Defendant Terra lied by claiming that there is no audio or video recording to substantiate Taylor's claims, even though Taylor requested it to be preserved in the initial grievance he filed.  (*Id.* at 24.)  He also alleges that Defendant Terra conspired with Defendant McCafferty "in violating Plaintiff's Fourteenth Amendment under Due Process."  (*Id.*)

Taylor filed two grievances related to these matters.  The first, grievance #1128829, was filed on January 14, 2025, and the second, grievance #1131696, was filed on February 8, 2025.  (*Id.* at 26, 29.)  In the Complaint, Taylor summarized his efforts in the grievance process and attached the relevant documentation.  (*See id.* at 26-94.)

## II.     STANDARD OF REVIEW

The Court will grant Taylor leave to proceed *in forma pauperis* because it appears that he is incapable of prepaying the fees to commence this civil action.[2]  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state

---

[2] However, since Taylor is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

a claim.  The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

As Taylor is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  However, conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").  "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim."  *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.    DISCUSSION

Taylor brings claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

Even upon a liberal reading of the Complaint, however, Taylor has failed to allege a plausible basis for any § 1983 claim.

### A.    Conditions of Confinement

Taylor represents in the Complaint that he is a convicted and sentenced prisoner. (Compl. at 6.)  The Eighth Amendment's prohibition of cruel and unusual punishment governs claims brought by convicted inmates challenging their conditions of confinement.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (citation omitted).  The Eighth Amendment requires prisons to provide adequate food, shelter, clothing, and medical care.  *Montanez v. Price*, 154 F.4th 127, 140 (3d Cir. 2025) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)), *petition for cert. filed sub nom. Pennsylvania v. Montanez*, 94 U.S.L.W. 3289 (U.S. Mar. 11, 2026) (No. 25-1073).  "Whether conditions constitute 'cruel and unusual punishment' is measured against 'the evolving standards of decency that mark the progress of maturing society.'"  *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Estelle*, 429 U.S. at 102).

Courts apply a two-prong test to determine whether prison officials violated the Eighth Amendment: "(1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberately indifferent to inmate health or safety.'"  *Porter*, 974 F.3d at 441 (quoting *Farmer*, 511 U.S. at 834).  As to the objective component of the analysis, "only those deprivations denying the minimal civilized measure of life's necessities," violate the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "[W]here conditions are not 'cruel and unusual' but merely 'restrictive and even harsh,' they do not violate the Eighth Amendment but rather 'are part of the

6

penalty that criminal offenders pay for their offenses against society.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  Regarding the subjective component of the analysis, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Thus, actual, not constructive, knowledge is required.  It is not enough that the official should have known of the risk of serious harm.  *See Thomas v. Tice*, 948 F.3d 133, 142 (3d Cir. 2020) (noting that the "knew-or-should-have-known standard was rejected for condition-of-confinement cases in *Farmer*").  The United States Court of Appeals for the Third Circuit recently explained the deliberate indifference standard:

> Negligence, even gross negligence, is not enough.  A prison official must be at least subjectively reckless.  That means he must consciously disregard a substantial risk of serious harm to the prisoner.  He must both be aware of the relevant facts and actually draw the inference that the prisoner faces such a risk.  If the official is not even conscious of the facts or the risk, his neglect cannot amount to punishment.

*DiFraia v. Ransom*, 171 F.4th 622, 628-29 (3d Cir. 2026) (quotation marks and citations omitted).  Additionally, as to the prison official's behavior, "[i]ndifference requires more than just making the wrong judgment call or failing to prevent harm."  *Id.* at 629.  In other words, "the Eighth Amendment does not create a general constitutional tort of prison negligence.  It requires subjective blameworthiness as well as serious mistreatment or neglect."  *Id.*

Taylor's allegation that he spent approximately one hour and fifteen minutes in the yard on two separate occasions in January and February, once in weather that was below thirty degrees, while wearing light-weight prison shoes, instead of boots, does not support a plausible Eighth Amendment claim.  Similarly, Taylor's allegation that he spent approximately one hour

and fifteen minutes in the yard on February 8, 2025, without a coat does not support a plausible Eighth Amendment claim. The allegations regarding the lack of boots and coat do not suggest that Taylor was denied the minimal civilized measure of life's necessities. The failure to provide Taylor with boots or a coat for seventy-five minutes on two occasions while he was in the RHU exercise yard does not amount to inhumane conditions. *See Smith v. United States*, 432 F. App'x 113, 115-16 (3d Cir. 2011) (*per curiam*) (upholding dismissal of claims based on the failure to provide an inmate with a jacket, coat, or rainwear during exercise between September and October, even when left outside for longer than the allotted one hour on rainy days, the failure to provide cold-weather clothing such as a scarf or gloves between November and January, and exercising in "paper thin canvas slip ons," which resulted in a sore throat, congestion, and numb feet, did not constitute a deprivation of the "minimal civilized measure of life's necessities"); *Bracey v. Sec'y Pa. Dep't of Corr.*, 686 F. App'x 130, 136 (3d Cir. 2017) (*per curiam*) (holding that allegedly "unbearably cold" conditions in cell did not violate the Eighth Amendment, absent showing that conditions were extreme); *Taylor v. Correct Care Sols.*, No. 12-841, 2013 WL 146271, at *4 (D. Del. Jan. 14, 2013) (dismissing as frivolous Eighth Amendment conditions-of-confinement claim where inmate alleged "he was forced to wait outside for 45 minutes in extreme weather condition in order to be fed and that he has gone without long underwear or had inadequate clothing for inclement weather conditions"); *Gans v. Rozum*, No. 06-62J, 2007 WL 2571527, at *5 (W.D. Pa. Aug. 31, 2007) (dismissing conditions of confinement claim based on allegations that inmate detained in RHU was subjected to "unpleasant exercise conditions at times" due to lack of adequate cold weather clothing but inmate did not deny that he was provided exercise, nor allege that he was forced to remain outside in dangerously cold conditions), *aff'd*, 267 F. App'x 178 (3d Cir. 2008); *Williams v. Lehigh Dep't of Corr.*, 79 F.

8

Supp. 2d 514, 518 (E.D. Pa. 1999) ("As Mr. Williams provides no evidence to suggest that prisoners are put in the position of either losing their recreational privileges or having to go outside in improper clothing, no Eighth Amendment violation is present in the fact that inmates in disciplinary segregation receive cloth slippers.").

Even assuming *arguendo* that Taylor has plausibly pled the objective prong of the analysis, Taylor has failed to adequately plead facts in support of the subjective prong. The Court understands Taylor to present conditions-of-confinement claims against Defendants Smith, Cavalari, Leary, McCafferty, and Terra. However, Taylor's allegations do not support a reasonable inference that any of these Defendants consciously disregarded a serious risk to Taylor's health or safety. Indeed, Taylor describes the Defendants' behavior in terms of neglect (*see generally* Compl. at 20-24), which is insufficient to plead an Eighth Amendment violation, *see DiFraia*, 171 F.4th at 628-29. Moreover, Taylor has not alleged that he was forced to go to the yard on the days in question without boots and/or a coat. *See Smith*, 432 F. App'x at 116 (finding no constitutional violation where inmate alleged that he received inadequate cold-weather clothing but could choose to remain in his cell); *Skelton v. Bruce*, 409 F. App'x 199, 208 (10th Cir. 2010) (concluding that there was no Eighth Amendment violation due to alleged inadequate clothing for cold weather when inmate has the option to remain indoors); *see also Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (finding the temporary denial of out of cell exercise for twenty-eight days was not a substantial deprivation). Accordingly, Taylor's Eighth Amendment claims based on the conditions of his confinement will be dismissed.[3]

---

[3] To the extent Taylor seeks to present a due process claim based on the alleged violation of a DOC policy, such claim is not plausible. It bears noting that the DOC policy relied upon by Taylor does not even mandate the issuance of boots. He quotes the policy as providing that

### B.       Equal Protection

The Court understands Taylor to allege that Defendants Smith, Cavalari, Leary, McCafferty, and Terra violated his rights to equal protection of the laws by not ensuring that he had the same access to boots and a coat as the rest of the jail population.  (*See* Compl. at 21-24.) The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  It does not forbid classifications but the distinctions between classes must be rationally related to a legitimate governmental purpose.  *Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 73 (3d Cir. 2022) (quotation marks and citations omitted).  To state an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class."  *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citation omitted).  Persons are similarly situated for purposes of an equal protection claim "when they are alike 'in all relevant aspects.'"  *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)); *Children's Health Def., Inc. v.*

---

inmates "shall be issued outerwear during inclement weather.  Outerwear shall include brown state issued shoes or boots . . . ."  (*See* Compl. at 17.)  Further, even assuming *arguendo* that the Defendants violated the DOC policy referenced by Taylor, violations of internal prison policies do not, by themselves, rise to the level of constitutional violations.  *See Steele v. Cicchi*, 855 F.3d 494, 508-09 (3d Cir. 2017) (stating a violation of prison policy is not, in itself, a constitutional violation); *United States v. Fattah*, 858 F.3d 801, 813-14 (3d Cir. 2017) (stating that a "violation of internal policy alone does not amount to a violation of constitutional due process" because government policies and guidelines "do not themselves create rights" (citing *United States v. Christie*, 624 F.3d 558, 573 (3d Cir. 2010)); *Bullard v. Seism*, 449 F. App'x 232, 235 (3d Cir. 2011) (*per curiam*) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable").

*Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 84 (3d Cir.) ("At the pleading stage, that means plaintiffs must adequately allege that they are alike in all relevant respects, . . . and must offer more than conclusory assertions." (quotation marks and citations omitted)), *cert. denied sub nom. Children's Health Def. v. Rutgers, the State Univ. of N.J.*, 144 S. Ct. 2688 (2024).  Where the plaintiff does not claim membership in a protected class, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000).  "Under the rational basis test, a law does not run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Stradford*, 53 F.4th at 77 (quotation marks and citations omitted).

While Taylor references the Equal Protection Clause throughout the Complaint, he simply offers no facts in support of his assertion that his equal protections rights were violated.  "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation," *id.* (quotation marks and citation omitted).  Furthermore, general allegations that a plaintiff was treated "less favorably" does not meet the pleading standard.  *Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (*per curiam*) (citations omitted).  Accordingly, all equal protection claims will be dismissed.

### C.      Retaliation

Taylor alleges he was denied boots, a coat, and a hat on February 8, 2025, in retaliation for filing a grievance on January 14, 2025.[4]  (*See* Compl. at 19.)  It appears that he seeks to assert this claim against Unit Manager Smith, although it is unclear if he seeks to assert this claim against any other Defendants.  (*See id.* at 21-24.)  In any event, Taylor has not pled a plausible retaliation claim against any Defendant.

To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citations omitted); *see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*) (same).  A prisoner's filing of a grievance or expressing an intent to file a grievance constitutes constitutionally protected conduct.  *Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  To plausibly plead the requisite causal connection a plaintiff usually must allege either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to

---

[4] Although Taylor references "official negligence" and "intentional infliction of emotional distress" in the heading of the retaliation claim (*see* Compl. at 19), the Complaint contains no facts in support thereof and the Court does not understand the Complaint to allege any state law claims.  In any event, all of Taylor's federal claims will be dismissed and there is no basis for diversity jurisdiction under 28 U.S.C. § 1332(a).  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

establish a causal link." *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

As stated *supra*, the Court must determine whether Taylor's Complaint contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 556 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation marks and citations omitted). "A complaint that pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (noting that the reviewing court is not required "to accept as true unsupported conclusions and unwarranted inferences" (citations omitted)).

Even under a liberal construction of the Complaint, the allegations of retaliation presented by Taylor fail to meet this standard. While Taylor alleges that Superintendent Terra was involved in the grievance process (*see* Compl. at 26-31), he has not plausibly alleged that any other Defendant was even aware that he had filed a grievance, or that any Defendant who was aware that he filed a grievance denied him boots and a coat. Moreover, Taylor does not allege any facts from which the Court can reasonably infer that the filing of the grievance on January 14, 2025, was the reason he was not given boots or a coat on February 8, 2025. "Absent supporting facts that make it reasonable to draw an inference of retaliation, . . . conclusory

assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation." *Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) (citations omitted); *see also Wallace v. Pa. Dep't of Corr.*, No. 24-152, 2025 WL 1568665, at *7 (W.D. Pa. June 3, 2025) ("Where every defendants' action can obviously be explained without supposition of a retaliatory motive, some concrete basis for retaliation must be alleged to state a plausible claim.  * * *  Wallace makes a classic circular argument: there must have been a retaliatory motive behind any actions by the defendants because a retaliatory motive would explain any actions by the defendants.  Using the word 'retaliation' or some form thereof does not allege retaliation.").

Accordingly, Taylor's retaliation claims will be dismissed.  *See Fritz v. County of Westmoreland*, No. 22-2999, 2024 WL 808970, at *3 (3d Cir. Feb. 27, 2024) (affirming dismissal of First Amendment retaliation claim where plaintiff's allegations as to causation were threadbare and speculative), *cert. denied sub nom. Fritz v. Westmoreland County*, 145 S. Ct. 279 (2024); *Miller v. Metzger*, No. 21-2223, 2022 WL 4820322, at *2 (3d Cir. Oct. 3, 2022) (*per curiam*) (affirming dismissal of First Amendment retaliation claim where prisoner failed to provide sufficient factual matter showing that alleged protected activity was a substantial or motivating factor in the decision to discipline him); *McGinnis v. Hammer*, 751 F. App'x 287, 292 n.2 (3d Cir. 2018) (*per curiam*) ("McGinnis' conclusory allegation that his grievance was a substantial motivating factor in Hammer's decision to deny ibuprofen fails to reflect more than a sheer possibility that a defendant has acted unlawfully." (citing *Oliver*, 858 F.3d at192)).

### D.   Deliberate Indifference to Serious Medical Needs

Taylor alleges that on January 15, 2025, Nurse Jane Doe "ignored" his appointment and reported a "false official statement" that he refused to be seen, causing him to "hold his wicket

hostage" in order to receive treatment.  (Compl. at 18.)  Taylor was taken to medical that day to address pain his feet which were "still blue-ish from lack of blood temperature."  (*Id.* at 19.)  Medical soaked his feet in hot water.  (*Id.*)  Nonetheless, Taylor contends that Nurse Jane Doe "neglected" his need for the sick call appointment and lied that he refused it, in violation of his Eighth Amendment rights.[5]  (*Id.* at 23.)  In the context of his discussion of the February 8 events, Taylor also generally asserts that he was "denied medical," although in the next sentence he states that he was given ibuprofen by "Nurse Liah."  (*Id.* at 20.)

To state an Eighth Amendment claim based on the failure to provide medical treatment, a prisoner must allege facts reflecting that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer*, 511 U.S. at 834-35.  "[A] medical need is sufficiently serious if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Montanez*, 154 F.4th at140 (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

As explained *supra*, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Deliberate indifference

---

[5] Taylor also contends that Nurse Jane Doe violated his Fourteenth Amendment equal protection rights, although he offers no facts in support of this assertion. (*See* Compl. at 23.)  Passing references to legal provisions are insufficient to bring a plausible claim before the Court.  *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue . . . will not suffice to bring that issue before this court." (alteration in original) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).  Accordingly, any claim based on a violation of the Equal Protection Clause against Nurse Jane Doe also will be dismissed.

can be inferred from circumstantial evidence, and is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez*, 154 F.4th at 141 (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017)).

Thus, "[n]ot every complaint of inadequate prison medical care rises to the level of deliberate indifference." *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Indifference requires more than just making the wrong judgment call or failing to prevent harm. And in the specific context of prison medical care, it is not enough that a prisoner or another doctor would prefer a different approach than the one corrections officials took." *DiFraia*, 171 F.4th at 629. "For better or worse, prisoners aren't constitutionally entitled to their preferred treatment plan or to medical care that is great, or even very good." *Id.* (quoting *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1277 (11th Cir. 2020)). Indeed, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)). For a claim of inadequate medical care, as opposed to a claim of a complete denial of medical care, courts will presume the treatment was proper and will require allegations that the treatment received violates professional standards of care in some extreme way. *DiFraia*, 171 F.4th at 629. "That means more than '[m]ere medical malpractice.'" *Id.* (alteration in original) (quoting *White v. Napoleon*, 897 F.3d 103, 108 (3d Cir. 1990)); *see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)

16

(stating that allegations of medical malpractice and mere disagreement as to proper medical treatment are insufficient to establish an Eighth Amendment violation).

Assuming *arguendo* for purposes of this Memorandum that Taylor has plausibly alleged a serious medical need, Taylor's Eighth Amendment deliberate indifference claim against Nurse Jane Doe fails as pled. Taylor's allegations, accepted as true, do not plausibly allege that he was denied treatment or subjected to an undue delay in treatment. As to his general allegation that he was denied treatment on February 8, he also states that he received treatment that day. As to his claim that Nurse Jane Doe neglected his need for a sick call appointment and falsely represented that he refused the sick call appointment, he states that he received treatment that day too. Moreover, in neither instance does Taylor plausibly allege that the treatment he received violates professional standards of care in some extreme way. Thus, Taylor has not alleged any facts from which the Court can reasonably infer that Nurse Jane Doe, or any other official at SCI Phoenix, was deliberately indifferent to his serious medical needs. *See Iqbal*, 556 U.S. at 678. Accordingly, Taylor's deliberate indifference claim against Nurse Jane Doe will be dismissed.

### E. Fourteenth Amendment Due Process

Taylor contends that "if there isn't any CCTV footage [p]reserved for the cruel & unusual punishment and retaliation of the 2-8-25 incident" as he requested in grievance #1131696, "[t]hen Defendant McCafferty failed to [p]reserve the evidence" in violation of his Fourteenth Amendment due process rights. (Compl. at 23.) As an initial matter, this claim is not plausible because it is speculative. *See Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). In any event, an alleged impropriety in the grievance process does not give rise to a constitutional claim under § 1983. Claims based on the handling of prison grievances fail because "prisoners do not have a

17

constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, allegations such as those raised here predicated on failures of the grievance process, or improper handling of or response to grievances, do not give rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that prisoners "do not have a constitutionally protected right to the prison grievance process" and "a state grievance procedure does not confer any substantive constitutional right" upon prisoners (quotation marks and citations omitted)).  Accordingly, any § 1983 claim based on the alleged failure to preserve video evidence will be dismissed.

### F.    Conspiracy

Taylor alleges that Superintendent Terra, who was involved in the grievance appeal process (*see* Compl. at 26-31), conspired with Defendant McCafferty in violating his Fourteenth Amendment due process rights (*id.* at 24).  The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of constitutional rights; (2) one or more of the conspirators performs any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law." *Jutrowski v. Township of Riverdale*,

18

904 F.3d 280, 294 n.15 (3d Cir. 2018) (cleaned up) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citations omitted). "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556. Taylor has presented no factual allegations to support a conspiracy claim and this claim will be dismissed. *See Cromwell v. Fichter*, No. 22-3169, 2023 WL 3734969, at *1 (3d Cir. May 31, 2023) (*per curiam*) (affirming dismissal where plaintiff presented no factual allegations to support a conspiracy claim).

### G.    Official Capacity

To the extent Taylor seeks to proceed against the named Defendants in their official capacities (*see* Compl. at 16), such claims may not proceed. Claims against government employees named in their official capacities are indistinguishable from claims against the governmental entity that employs them, meaning "official capacity" claims are treated as claims against the entity itself, here, the Pennsylvania DOC. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Further, the Commonwealth of Pennsylvania and its agencies, including the DOC, are not "persons" who may be liable under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-66 (1989); *Endrikat v. Little*, No. 23-2167, 2023 WL 8519196, at *3 (3d Cir. Dec. 8, 2023) (*per curiam*) (affirming finding that Pennsylvania DOC is not subject to suit under § 1983 (citing, *inter alia*, *Curtis v. Everette*, 489 F.2d 516, 521 (3d Cir. 1973))). Additionally, the Eleventh Amendment bars suits seeking money damages against a state and its agencies in federal court when the state has not waived that immunity, *Will*, 491 U.S. at 66, and

19

the Commonwealth has not waived that immunity, 42 Pa. Cons. Stat. § 8521(b).  Accordingly,

Taylor's official capacity claims for damages will be dismissed with prejudice.

## IV.    CONCLUSION

The Court will grant Taylor leave to proceed *in forma pauperis* and dismiss his

Complaint.  All official capacity claims for damages will be dismissed with prejudice pursuant to

28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  All other claims will be dismissed

without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Taylor

may file an amended complaint in the event he can address the defects the Court has noted as to

the claims that are dismissed without prejudice.  An appropriate Order regarding amendment

follows.

BY THE COURT:

_____

**MARY KAY COSTELLO, J.**